Good morning, Your Honor, and may it please the Court, Josh Podol of Williams and Connolly for Caremark. Pharmacy benefit managers, like my client Caremark, negotiate the net cost of drugs for their health plan clients with manufacturers. Now, some of those clients are private insurers. Others administer health plans for the federal government under the Federal Employee Health Benefits Act, or FEBA. To maximize its leverage in rebate negotiations, Caremark negotiates the net cost of drugs for multiple plans at the same time. Those negotiations are not separated into FEBA and non-FEBA buckets. During the relevant period, all insulin rebate negotiations Caremark conducted for FEBA plans were for non-FEBA plans, too. That means the rebate negotiations that West Virginia characterizes as a deceptive scheme and challenges in this case are, in fact, the very negotiations that determine how much the federal government ultimately will pay for medicine federal employees receive under federally sponsored health plans. Considering these exact same facts, the First Federal Officer removal was proper. That decision is indistinguishable and it is correct. The Court should reach the same conclusion here. First, this Court and others have consistently held that contractors and subcontractors act under federal officers when they help implement federal health care programs. And that's just what Caremark is doing when it negotiates competitive health insurance benefits to its employees. Second, Caremark's rebate negotiations for FEBA plans are connected or associated with West Virginia. Is there any distinction between this case and the Puerto Rico case from the First Circuit and the California case from the Ninth Circuit? There's not, Your Honor. It's the same set of allegations. I suspect what my friend Mr. Magestro will say is that in this case, the only recovery sought is by the West Virginia state plan. But that doesn't matter to the allegations underlying our notice of removal. And West Virginia attacks generally rebate negotiations in the scheme. And if you look at JA129, they seek recovery for, they say, and I'm quoting, the PBM defendants' negotiations have caused and continue to cause precipitous price increases. So it's the same challenge to price increases coming out of negotiations with manufacturers. Those negotiations are indivisible. And so the, in other words, the state's challenge to the rebate negotiations and the prices that the manufacturers set after them, both here and in Puerto Rico and in California, is necessarily a challenge to Caremark's FEBA negotiations. And any attempt to isolate the impact of non-FEBA plans would raise exactly the kind of difficult causation question that Your Honor said in 3M has to be decided in a federal forum. As to the last element of federal officer removal, which is the colorable federal defense, Caremark has two more than colorable federal preemption defenses, though all they have to be is colorable. First, FEBA has an express preemption provision that would bar the state suit in its entirety. And even if it didn't, there's an obstacle preemption defense here because what the plaintiffs are doing, here and in all of these insulin cases, is making a broadside attack on PBM's rebate negotiations with manufacturers, which are a core element of their business model, and, of course, a core element of the healthcare system, the way that drug prices stay reasonable and the way that the federal government under FEBA is able to offer competitive prices is having pharmacy benefit managers, like Caremark and others, negotiate rebates that drive their net costs down. So there's an obstacle preemption defense in that a ruling for the plaintiffs here would fundamentally disrupt FEBA and undermine its core goals. For all those reasons, and as discussed further in our brief, the court should reverse, and I welcome the court's questions. Okay. Is that it? That's all I have prepared for you.  I have one question. Can you talk about the recent Hawaii opinion that you thought of something at all? Yeah, absolutely, Judge Thacker. So three points as to Hawaii. The first point is Hawaii fundamentally has nothing to do with this case because the district court, it is the same facts. Well, actually, it's similar. The plaintiffs there pleaded, although the allegations look similar, they pleaded something slightly broader to avoid going into the federal MDL, but it's the same general allegations. However, the Hawaii district court started by saying that First Circuit and Fourth Circuit law, Puerto Rico and then 3M, are distinguishable. And then it proceeded to apply, at least to the causal nexus standard, what it conceived as Ninth Circuit law. Now, we disagree with that ruling of Ninth Circuit law, but so for that reason, it's distinguishable. So it's like the First Circuit and Ninth Circuit cases you talked about earlier has similar facts, but you disagree with the application of the law. Correct, and I can get to that in a minute, but there's actually the more fundamental point is the court itself said that it believed Ninth Circuit law was different. So it didn't try to apply, it didn't try to disagree with Puerto Rico, it just said the law in the Ninth Circuit was different from the One-Circuit case, and so it's a different case than the       It's a very complicated matter. The second thing it's holding on the causal nexus requirement essentially was that there wasn't evidence that the government directed Caremark to conduct its rebate negotiations for FIBA and non-FIBA plans at the same time. That holding runs headlong into this court's decision, Judge Niemeyer's decision in Sawyer. It also runs headlong into the Supreme Court's decision in Akers, which says that the Federal Government doesn't need to prescribe every detail of how conduct is done. As far as I know, every circuit to consider the question has said the same thing. The Second Circuit in Isakson, Third Circuit in Ingrate Commonwealth, Your Honor, in Sawyer, the Fifth Circuit in a number of cases, the First in Norman. And then finally, as to the disclaimer, the Court credited Weiss' disclaimer, but it did so based not on allegations about the price of insulin, but instead on allegations about     I think it's important to start out explaining what the claims, the limited nature of the claims in this case. There's no allegation in this case that the plaintiff is seeking to recover expensive paid health benefit plans from anybody else other than the taxpayers and the insurers in the state of West Virginia. All of the other cases that are at issue here are governmental entities bringing broad consumer protection claims on behalf of groups of people that are much broader than the state is bringing here. And why is that important? That's important because the state of West Virginia has a separate contract with Caremark, or did at a time relevant in this case. Under that contract, Caremark promised to pay, and this is a separate contract not negotiated with the federal government. Now, the contract between Caremark and the drug manufacturers, they allege, and we haven't had a chance to make a discovery, but that was one unitary negotiation. But there was a separate contract. For removal purposes, don't we have to credit? And I think under this court's recent decision, under your decision Judge Agee, I think that's correct. Well, did the First Circuit and Ninth Circuit do the same thing? I think the First Circuit did, but the Ninth Circuit, what they did is they remanded for jurisdictional discovery, and since the Ninth Circuit remanded... Well, does Judge Edo agree with the First Circuit? He did. He decided. But since the Ninth Circuit remanded, every Ninth Circuit district court in these cases has remanded the cases to the state court. Hawaii reversed itself. Nevada remanded, and Los Angeles, the court in Los Angeles remanded. The application of the Ninth Circuit test, when you actually get down to look at the facts, in the disclaimers, the courts there remanded. But for you to prevail, you would have to say the First Circuit and Judge Edo were both wrong. Yes. But I think there's another way for them to... What I would like the opportunity... Let me finish the point I was making before, and that is the separate contract for rebates is apart from the contract for the purchases. And so if you credit their theory, that they created this great deal with the defendant, with the manufacturer, where they got rebates, what they did with the rebates differs by contract with the different plans. And the law applicable to those... You agree that those negotiations, though, were collective negotiations for the entire purchase of the drugs. And your argument is that after they obtained the rebates, then they handled them differently with respect to the different customers. And that is the nature of the plaintiff's claim in this case, is that it was their obligation to return those rebates to the state of West Virginia. That was what they were hired to do, as my friend said, to lower the net cost of the drugs. And the contract the state of West Virginia entered into with Caremark was for them to return all of those rebates to the state. The allegation in the complaint is that they did not. There's no federal interest implicated by holding them to the breach of that contract. And that's simply our claim. Now, I recognize that since we filed this case, since Judge Bailey ruled on it, since we briefed it, there have been a lot of decisions. And one of the things that I was struck by, Judge Agee, is what you did in 3M. In 3M, the court following the Raoult case in the Seventh Circuit, 3M was an environmental case, where the question was, what was the source of the pollution? So a federal source and a non-federal source. And there were two cases, 3M, and then there was the Raoult case in the Seventh Circuit. In Raoult, what the plaintiff did was the plaintiff agreed that if any of the pollution came from the federal source, they lost. That solved the problem that my friends bring up, that they're supposedly entitled to a federal court determining that causation. We disagree with that, but we acknowledge that's what 3M says. But if the... On some places, this would seem to be an easier case, because in 3M, you had this situation where there could be some that were attached to federal property, some that were not. But here, you have what would seem like a unitary situation, because you've only done a single negotiation. So this actually seems to be an easier case than 3M. An easier case for me or for them? For them. Okay. And I'll tell you where, after reading all these decisions and why I brought up 3M and Raoult, is because in 3M, this court gave the state the opportunity to disclaim all of the federal. And after reading the decisions and discussing it with my client, the state is willing to do that here. The state is willing to say that the price negotiations, the unitary price negotiations, to the extent that our complaint alleges that Caremark allowed the negotiations to increase the price, and I concede that claim's in the complaint. We're willing to weigh that claim against Caremark and limit our claim only to... Aren't we supposed to take the complaint as filed on a jurisdictional basis? Those statements appear in the law. In these cases, that hasn't happened. In 3M, you had that offer to the state. In Raoult, the Seventh Circuit made that offer to the state. In California, Ninth Circuit opinion, they remanded for clarification of the waiver. And in the Hawaii case, they did the same. They allowed jurisdictional discovery. So I would go back to this idea of federal jurisdiction, federal courts are courts of limited jurisdiction, that there needs to be some limit. And what the courts appear to be doing is they appear to be being very careful about when we let private parties take advantage of federal defenses. Generally, the rule is that federal defenses are not things that give us jurisdiction. And so by the state agreeing to waive any claim with respect to insulin price and limit their claim against Caremark only to rebates, to the separate contract that has no federal interest, separately negotiated, there is no difficult, as this court said in 3M, difficult causation questions to be handled by the state court. The state court looks and sees what rebates Caremark got. None of that was before the district court. It's not in the record. And nor was it in the record in 3M when you made that offer, nor was it in the record in Raoult. And I would suggest that maybe remand to allow those stipulations to happen would be appropriate. The state's willing to do that. Thank you. Thank you. You heard it for the first time here when you say it. I did, Your Honor. I say that I don't. I think, as with many things, the devil's in the details, and I don't think the state is actually going to be willing to give up what my friend just said, because if it were, it would be giving up. He just said it pretty clearly, and my question arises, and I understand this is unusual because it's not in the record and it's not in the complaint. My question is whether this would be an appropriate question on remand, and that if it wasn't waived, we could have one ruling. If it were waived, we could have another ruling. I don't know if that's possible. They may be the same ruling, but clearly the state wants to litigate this in its own courts and is willing to go to some lengths for that purpose. The problem, Your Honor, is what this is. This, in the complaint that we have in front of us, in the complaint that the court has in front of it, is a, quote, insulin pricing scheme, which consists of negotiations between pharmacy benefit managers and manufacturers to raise the price of insulin. That is the core, fundamental allegation in the complaint. The core allegation in this complaint is not, Herr Mark, you should have returned $10 and you actually gave us $5. That would be a harder case. But the allegation in this complaint is you engaged in improper conduct that inflated the price of insulin. So I appreciate what my friend is saying, but I think on the complaint that's before the court, on the record that's before the court, unless they are almost literally waiving everything except what I said, any claim that we were unjustly enriched, any fraud claim, anything of that nature still has all the same problems. So with all respect, one, I don't think you could have a waiver here to the extent rebate negotiations, as opposed to just literally the payment is challenged. I don't think you could have a waiver that would work. Two, I think the proper course here, to the extent the state wants to make such a waiver, is for the court to go ahead and rule on this case, and the court should do the same thing the First Circuit did in Puerto Rico, reverse the remand decision. The case will be sent to the multidistrict case in front of Judge Martinotti. And if the state wants to amend there, then it can do so, and we can have a solid record to address this on. Because it could be, if the state, if the counsel really writes a complaint, it just says, Chairmark, you breached your contract because you should have given us X dollars in rebates, and you gave us Y, not because the prices were inflated, but just because you gave us the wrong amount of money. It would be a hard argument for me, I would concede. But that isn't really the flavor of this complaint or in this complaint at all. And so, and I think it would be perilous. I think it would be fraud and lead to confusion to take the approach of essentially rewriting the complaint on the fly. I think the court should rule on the record that's in front of it. I think we should go ahead and proceed. And then if the state wants to amend to address these issues in a way that will take, truly take federal conduct out, then I think it would do so. But I don't think that doing so now is either legally proper or, candidly, a practically efficient way to proceed. Thank you. Will the adjourned court sign and die, and come down and agree to counsel? Thank you, Your Honor. This honorable court stands adjourned, sign and die. Thank you, Your Honor.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker